# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| JAMES SLOMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRESSTEK, INC., EDWARD J. MARINO and MOOSA E. MOOSA,<br><br>Defendants. | Civil Action No. 1:06-cv-377-JL |

## LEAD PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION (DOCKET NO. 49)

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

PRELIMINARY STATEMENT .................................................................................... 1

PROCEDURAL HISTORY ............................................................................................ 2

ARGUMENT .................................................................................................................. 3

I.    DEFENDANTS IMPROPERLY SEEK TO RE-LITIGATE ISSUES
FROM THEIR MOTION TO DISMISS, AT A HIGHER
STANDARD FOR PLAINTIFFS, UNDER THE GUISE
OF CLASS CERTIFICATION ARGUMENTS. ................................................. 3

II.    DEFENDANTS' ARGUMENTS IN ACTUALITY CONSTITUTE
A MOTION FOR RECONSIDERATION OF THIS COURT'S
MOTION TO DISMISS DECISION. DEFENDANTS FAIL TO
MEET THE GOVERNING STANDARDS FOR SUCH A MOTION. ........... 7

III.   DEFENDANTS' MERITS-BASED ARGUMENTS, NOT TIED
TO ANY RULE 23 ELEMENT, ARE IMPROPER AT THE
CLASS CERTIFICATION STAGE. MOREOVER, IF ANYTHING,
THEY MERELY HIGHLIGHT QUESTIONS COMMON TO THE
CLASS AS A WHOLE THAT PREDOMINATE OVER ANY
ISSUES FACING INDIVIDUAL CLASS MEMBERS. ...........................8

IV.   THIS CASE SATISIFES THE RULE 23 REQUIREMENT THAT
COMMON ISSUES PREDOMINATE. ........................................................... 13

     A.     Plaintiff's Showing Satisfies Rule 23. .................................................. 13

     B.     Common Questions Predominate Over Any Individual
Issues Of Loss Causation, Damages, Or Unique Defenses. ................ 14

     C.     Presstek's Stock Traded In An Efficient Market During the
Class Period. The Plaintiff Is Therefore Entitled To The
Fraud-On-The-Market Presumption of Reliance. .............................. 17

V.    DEFENDANTS' CONTENTION AS TO THE CLASS
DEFINITION IS PREMATURE. ...................................................................... 21

CONCLUSION ............................................................................................................. 22

Lead Plaintiff James Sloman ("Plaintiff'or "Sloman") respectfully submits this memorandum in support of his Motion for Class Certification (Docket No. 49)("Plaintiff's Motion")[1] and in reply to both Defendant Presstek, Inc.'s Corrected Objection to Lead Plaintiff's Motion for Class Certification (Docket No. 72) ("Presstek Opposition" or "Presstek Opp.") and Individual Defendants Edward J. Marino's and Moosa E. Moosa's Memorandum of Law In Opposition to Plaintiff's Motion for Class Certification (Docket No. 74) ("Individual Defs. Opposition" or "Individual Defs. Opp.").

## PRELIMINARY STATEMENT

Plaintiff has brought this securities fraud case on behalf of himself and a putative Class of purchasers of Defendant Presstek, Inc.'s common stock.[2] A procedural milestone is now before the court – whether or not to certify this case as a class action under Fed. R. Civ. P. 23.

Defendants have no grounds for contending that this case does not meet each of the elements of Rule 23, and their briefs are nearly devoid of any arguments based on the elements of Rule 23.[3] Instead, Defendants, in an effort to limit the Class Period, have resorted primarily to rearguing various issues already briefed extensively, considered by the Court, and addressed by Judge DiClerico on the motion to dismiss. But Defendants' attempt to re-litigate those issues is unavailing for three principal reasons. First, courts consistently reject attempts by defendants at turning class certification briefing into a rehashing of motion to dismiss arguments. Second, Defendants do not meet the standards of the District of New Hampshire Local Rules or of the

---

[1] Plaintiff's Motion for Class Certification and his Memorandum in Support thereof (Docket 49-2) were filed together as Docket No. 49. The Memorandum in Support will be referred to herein as "Plaintiff's Opening Brief."

[2] As used herein, "Class" and "Class Period" are defined in the same way as in Plaintiff's Opening Brief.

[3] The Presstek Opposition discusses Rule 23 on just five of its pages, while the Individual Def. Opposition does not discuss it at all.

First Circuit for a motion for reconsideration of this Court's prior order. Third, even assuming, *arguendo*, Defendants' arguments are considered as addressing the issue of class certification, they are nevertheless an impermissible effort to litigate the merits at the class certification stage. Merits issues can be considered only if and to the extent that they implicate or overlap with the elements of Rule 23, and Defendants' arguments are completely divorced from Rule 23 elements. Moreover, at the class certification stage, courts routinely reject attempts by defendants at using merits-based arguments to constrict proposed class periods.

Simply put, Defendants' unorthodox attempt to morph class certification briefing in this action into an exercise of déjà vu regarding their motion to dismiss should be rejected outright. This Court should not revisit any motion to dismiss issues now, before any merits discovery has taken place. However, if it does, it must do so under the stringent standards that apply to a motion for reconsideration (and if those standards are deemed to have been met, then the underlying arguments themselves would be reviewed through the prism of motion to dismiss standards). Moreover, the Court should not, as Defendants urge, probe the undeveloped merits of this case for purposes of tinkering, now, with the scope of the proposed Class. Defendants' rehashed motion to dismiss arguments really are properly presented again, if at all, in a motion for summary judgment once merits discovery has closed.

**PROCEDURAL HISTORY**

Plaintiff filed his Amended Complaint (Docket No. 13) on February 1, 2007. Thereafter, Defendants moved to dismiss, and after the parties fully briefed the issues,[4] the Court entered its

---

[4] The roughly 100 pages of motion to dismiss papers included the following: Defendants' Motion to Dismiss Amended Class Action Complaint Alleging Violation of the Federal Securities Laws and their memorandum in support thereof (Docket No. 15)("Defs. Initial Motion to Dismiss"), Plaintiff's Opposition to Defs. Motion to Dismiss (Docket No. 20)("Pl. Initial Opp. to Defs. Motion to Dismiss"), Defendants' Reply Memorandum in

detailed, 34-page Order ("Motion to Dismiss Decision") fully denying Defendants' motion to dismiss on September 18, 2007. *See* Docket No. 31, now available at 2007 WL 2740047 (D.N.H. Sept. 18, 2007). Significantly, the Court has already heard all of the arguments favoring dismissal that Defendants recycle in their class certification opposition briefs, and the Court was not persuaded by a single one of these arguments that dismissal was appropriate.

After the Motion to Dismiss Decision entered, the parties were permitted to engage in limited discovery, related only to the issue of class certification, most of which was taken by Defendants.[5] At Defendants' urging, the Court imposed a moratorium on merits discovery until June 7, 2008. *See* Pretrial Order of February 22, 2008 (Docket No. 57) at 2. Thus, although Plaintiff served merits document requests on Defendants in March, to date, he has not received any responsive documents. Instead, merits discovery thus far has been limited merely to the exchange of Rule 26(a)(1) initial disclosures by the parties.

## ARGUMENT

**I.  DEFENDANTS IMPROPERLY SEEK TO RE-LITIGATE ISSUES FROM THEIR MOTION TO DISMISS, AT A HIGHER STANDARD FOR PLAINTIFFS, UNDER THE GUISE OF CLASS CERTIFICATION ARGUMENTS.**

The sole issue before the Court now is whether the elements of Fed. R. Civ. P. 23 are met in this case, such that class certification is appropriate. Instead of addressing this issue,

---

Support of Their Motion to Dismiss Amended Class Action Complaint (Docket No. 26)("Defs. Motion to Dismiss Reply"), Defendant's Supplemental Memorandum in Support of Their Motion to Dismiss the Amended Complaint (Docket No. 29)("Defs. Motion to Dismiss Supplement"), and Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss Amended Class Action Complaint (Docket No. 30)("Pl. Supplemental Opp. to Defs. Motion to Dismiss").

[5] Defendants served 45 class certification document requests on December 19, 2007; received production of the responsive documents from Plaintiff on November 13, 2007, February 12, 2008, and March 24, 2008, consisting of Plaintiff's individual and IRA account statements and e-mail correspondence; and took Plaintiff's deposition on April 11, 2008. By contrast, Plaintiff served just 5 class certification document requests on Defendants on January 9, 2008, and Plaintiff received a small production of 82 pages, consisting of press releases and analyst reports, on March 4, 2008. Plaintiff took no class certification depositions.

Defendants have devoted nearly all of their class certification briefs toward re-litigating their motion to dismiss.  *See* Individual Defs. Opp. (100% spent on motion to dismiss issues); Presstek Opp. (all but 5 pages spent on motion to dismiss issues).  Moreover, Defendants urge this Court to address their recycled arguments not under the stringent standards they would face on a motion to dismiss or (as discussed below) a motion for reconsideration, but rather, in such a way as to place a greater burden on <u>Plaintiff</u> to prove the merits of his case now, notwithstanding that no merits discovery has been taken (at Defendants' urging).  Such an approach is entirely improper, and federal courts do not hesitate in rejecting it.

For example, in *DeMarco v. Robertson Stephens, Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), investors brought a securities fraud class action against a firm and its managing director, survived a motion to dismiss, and moved for class certification.  After discussing the elements of Rule 23(a) and (b)(3), and stating that plaintiffs had met them, the court addressed head-on defendants' attempts to re-litigate motion to dismiss issues within their class certification briefing, in language that is directly on point and instructive to this Court:

> Finally, in the guise of objections to the definition of the class, defendants also attempt to re-argue issues decided against them on the motion to dismiss, such as the appropriate measure of loss causation and the temporal extent of the alleged fraud. … Whatever else may be required of plaintiffs' class certification motion, it is emphatically not an opportunity for a second round of review, at a higher standard no less, of the substantive merits of plaintiffs' underlying claims. Plaintiffs' claim that [defendants] committed securities fraud…survived a motion to dismiss, and those substantive claims may proceed to summary judgment without further review.  The only question on this motion is whether they may pursue those claims on behalf of a class of similarly situated persons, or whether they must do so as individuals.  That question has now been answered. Defendants may renew their arguments as to loss causation and the temporal extent of the fraud on a motion for summary judgment or at trial.

228 F.R.D. 476 (granting plaintiffs' motion for class certification). *See also In re: Salomon Analyst Metromedia Litig.*, 236 F.R.D. 208, 223 (S.D.N.Y. 2006)(citing *DeMarco* and stating further, "The issue on this motion is not whether plaintiffs have proved their case on the merits, or even whether their claims will survive summary judgment. … The issue is rather the preliminary procedural issue of whether those questions will be most efficiently addressed on a class rather than an individual basis.").

Here, Judge DiClerico, after extensive briefing by the parties, considered all of the issues Defendants seek to rehash now and, in entering his Motion to Dismiss Decision, was <u>not</u> persuaded by Defendants' arguments that dismissal, in whole or in part, of any of Plaintiff's claims was warranted. This Court should follow the sound approach set forth by the *DeMarco* court and reject Defendants' attempts at re-litigating <u>any</u> of the following issues within the context of the briefing on Plaintiff's Motion for class certification:

(1) Whether Plaintiff's Amended Complaint sufficiently pled scienter with regards to the July 27, 2006 press release. *See* Presstek Opp. at 9-17; Individual Defs. Opp. at 4-12. *Compare* Defs. Initial Motion to Dismiss at 17-20; Defs. Motion to Dismiss Reply at 13; Defs. Motion to Dismiss Supplement at 1-3. *See also* Motion to Dismiss Decision, 2007 WL 2740047 at *6-*10 (weighing the parties' scienter arguments, discussing the relative strength of scienter inferences, and refusing to dismiss Plaintiff's claims concerning the July 27, 2006 press release).

(2) Whether Plaintiff's Amended Complaint was based upon sufficient evidence / documentation (e.g. internal company documents, press releases, etc.). *See* Presstek Opp. at 10-12; Individual Defs. Opp. at 5-8. *Compare* Defs. Initial Motion to Dismiss at 12-14. *See also* Motion to Dismiss Decision, 2007 WL 2740047 at *6 (noting that Plaintiff relied upon a

5

multitude of sources cited in the Amended Complaint and rejecting Defendants' arguments that Plaintiff needed to point toward a whistleblower or 'smoking gun' internal document).

(3)   Whether Defendant Marino's and Defendant Moosa's status as corporate officers permits knowledge to be imputed to them.  *See* Presstek Opp. at 15-16; Individual Defs. Opp. at 8-10.  *Compare* Defs. Initial Motion to Dismiss at 22-23; Defs. Motion to Dismiss Reply at 14-15.  *See also* Motion to Dismiss Decision, 2007 WL 2740047 at *7, *10-*12 (noting Marino's and Moosa's roles in company public relations, their roles in providing much of the substance of the company's public statements at issue, and their positions as top executives in finding that the press releases were attributable to them and that Plaintiff adequately pled a Section 20(a) claim).

(4)   Whether the PSLRA's safe harbor provisions shield Defendants from liability stemming from the July 27, 2006 press release.  *See* Presstek Opp. at 17-23; Individual Defs. Opp. at 12-20.  *Compare* Defs. Initial Motion to Dismiss at 14-17; Defs. Motion to Dismiss Reply at 11-12.  *See also* Motion to Dismiss Decision, 2007 WL 2740047 at *4-*6 (declining to extend PSLRA safe harbor protection to the July 27, 2006 press release because Plaintiff's case focuses primarily on the omission from that press release of material information about present or recently occurring circumstances).

(5)   Whether Plaintiff's Amended Complaint sufficiently pled the "actionability" of the July 27, 2006 press release, under Fed. R. Civ. P. 9(b) and the PSLRA, due to its falsity.  *See* Presstek Opp. at 23-24.  *Compare* Defs. Initial Motion to Dismiss at 17-18.  *See also* Motion to Dismiss Decision, 2007 WL 2740047 at *5 (discussing that Plaintiff's allegations of falsehood related to non-forward-looking aspects of the July 27, 2006 press release and declining to apply PSLRA safe harbor provision).

(6)  Whether Plaintiff adequately pled motive on the part of Defendants.  *See* Presstek

Opp. at 13-14; Individual Defs. Opp. at 10-12.  *Compare* Defs. Initial Motion to Dismiss at 20;

Defs. Motion to Dismiss Reply at 13.  *See also* Motion to Dismiss Decision, 2007 WL 2740047

at *8-*9 (finding of sufficient allegations that Marino and Moosa knew of material reasons for

doubting company revenue projections and were aware of serious problems that would affect Q3

2006 revenues and stating that "such knowledge alone is sufficient to establish scienter").

## II.  DEFENDANTS' ARGUMENTS IN ACTUALITY CONSTITUTE A MOTION FOR RECONSIDERATION OF THIS COURT'S MOTION TO DISMISS DECISION.  DEFENDANTS FAIL TO MEET THE GOVERNING STANDARDS FOR SUCH A MOTION.

Defendants' briefs re-litigating motion to dismiss issues are, in substance if not title,

motions for reconsideration of Judge DiClerico's Motion to Dismiss Decision.  As such, they are

subject to the stringent standards set forth in Local Rule 7.2(e) and the case law, none of which

have Defendants even discussed, let alone argued that they have met.

Under these standards,

> A motion to reconsider an interlocutory order of the court, meaning a motion
> other than one governed by Fed. R. Civ. P. 59 or 60, shall demonstrate that the
> order was based on a manifest error of fact or law and shall be filed within ten
> (10) days from the date of the order unless the party seeking reconsideration
> shows cause for not filing within that time.  Cause for not filing within ten (10)
> days from the date of the order includes newly available material evidence and an
> intervening change in the governing legal standard.

Local Rule 7.2(e).[6]  "Manifest error" as contemplated by Local Rule 7.2(e) "occurs only if the

court 'misapprehended some material fact or point of law.'"  *Dolan v. Sunguard Sec. Fin., LLC*,

2008 WL 686257, *1 (D.N.H. Mar. 6, 2008), *quoting Palmer v. Champion Mortgage*, 465 F.3d

24, 30 (1st Cir. 2006).

---

[6]  Fed. R. Civ. P. 59 pertains to requests for a new trial or altering or amending a judgment.  Fed. R. Civ. P. 60 pertains to relief from a judgment or order.  Neither rule would apply here.

"A motion for reconsideration ordinarily is not a 'vehicle for revisiting a party's case and rearguing theories previously advanced and rejected.'" *Id.* at *1 *quoting Palmer*, 465 F.3d at 30. Moreover, "The First Circuit has noted that a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" *Northwest Bypass Group v. U.S. Army Corps of Engineers*, 2008 WL 1843889, *6 (D.N.H. Apr. 22, 2008) *quoting Palmer*, 465 F.3d at 30 (*quoting* 11 Charles Alan Wright et al., *Federal Practice & Procedure* §2910.1 (2d ed. 1995)).

In applying these standards to Defendants' arguments, it is clear that Defendants have failed to carry their burden on a motion for reconsideration. Defendants have not argued that Judge DiClerico's detailed Motion to Dismiss Decision is based, in whole or part, on a manifest error, due to his misapprehension of some material fact or point of law. Nor have they argued the existence of some newly available piece of evidence or intervening change in the governing law since that decision was entered, as they must in order to show cause for raising these issues 8-months later, and not within the 10 days provided in Local Rule 7.2(e). As such, Defendants' attempt to re-litigate motion to dismiss issues should be rejected in full.[7]

III. **DEFENDANTS' MERITS-BASED ARGUMENTS, NOT TIED TO ANY RULE 23 ELEMENT, ARE IMPROPER AT THE CLASS CERTIFICATION STAGE. MOREOVER, IF ANYTHING, THEY MERELY HIGHLIGHT QUESTIONS COMMON TO THE CLASS AS A WHOLE THAT PREDOMINATE OVER ANY ISSUES FACING INDIVIDUAL CLASS MEMBERS.**

Defendants devote the vast majority of their briefs toward trying to constrict the proposed Class Period by removing from it the period extending from the July 27, 2006 press release until the Noble Financial ONTRACK symposium on September 28, 2006, on the theory that Plaintiff

---

[7] Even if Defendants had satisfied the stringent standard on a motion for reconsideration, this Court, in reconsidering its Motion to Dismiss Decision, would have to once again apply the First Circuit's motion to dismiss standards, not, as Defendants urge, some alternative framework favoring their position.

has not established that the July 27, 2006 press release is "actionable." *See* Presstek Opp. at 7-24; Individual Defs. Opp. at 2-20. Their goal is obvious: to limit their exposure by reducing this class action to a one-day class period. However, the merits issue Defendants urge upon the Court is one which the federal courts consistently decline to consider at the class certification stage.

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacqualin*, 417 U.S. 156, 178 (1974). In interpreting this standard, the First Circuit has permitted district courts to look past the pleadings into the merits of a case only to the extent necessary to determine if the elements of Rule 23 are met. Thus, for example, a district court "has the power to test disputed premises early on if and when the class action would be proper on one premise but not another." *In re: Polymedica Corp. Sec. Litig.*, 432 F.3d 1, 6 (1st Cir. 2005), *quoting Tardiff v. Knox County*, 365 F.3d 1, 4-5 (1st Cir. 2004). However, "considering the required showing that plaintiffs must make to fall along a spectrum from less rigorous (motion to dismiss stage) to most rigorous (summary judgment stage), class certification falls closer to the former, because it is conducted before the completion of substantive discovery." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 270 (D. Mass. 2005).

"In making these determinations, however, courts should refrain from considering 'aspect[s] of the merits unrelated to a Rule 23 requirement." *In re: Initial Public Offering Sec. Litig.*, 243 F.R.D. 79 (S.D.N.Y. 2007), *quoting Miles v. Merrill Lynch & Co.*, 471 F.3d 24, 41 (2d. Cir. 2006). Thus, a district court can consider "the probable course of the litigation" and

"formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Polymedica*, 432 F.3d at 6, *quoting Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000).

Applying these standards, it is clear that Defendants ask the Court to engage in a deep dive into the merits of this action, before merits discovery has even begun let alone ended, that is not related to the elements of Rule 23. The vast majority of Defendants' briefs make no mention whatsoever of <u>any</u> Rule 23 element while setting out merits-based arguments concerning the July 27, 2006 press release about such issues as, for example, whether Plaintiff has adequately alleged *scienter* (*see* Presstek Opp. at 8-17; Individual Defs. Opp. at 4-12), whether the PSLRA's safe harbor provisions act to insulate them against liability (*see* Presstek Opp. at 17-23; Individual Defs. Opp. at 12-20), or whether the July 27, 2006 press release constitutes an actionable statement due (*see* Presstek Opp. at 23-25).

In actuality, what Defendants have done is highlight questions that are <u>common</u> to the entire Class, that are appropriate for class-wide treatment, and that predominate over any individual issues facing Class members. Those common questions include: (1) whether Plaintiffs can establish that Defendants acted with *scienter*, (2) whether the PSLRA's safe harbor provisions will be a viable defense at trial, and (3) whether the July 27, 2006 press release can support a finding of liability under the federal securities laws due to its falsity. Thus, Defendants' position actually <u>supports</u> the certifiability of this action as a class action.

Furthermore, federal courts <u>have repeatedly</u> refused to narrow a class period based on merits-focused arguments of the type Defendants raise here. For instance, in *Bharucha v. Reuters Holdings PLC*, 1993 WL 657863 (E.D.N.Y. Oct. 29, 1993), plaintiffs in a securities

fraud action moved for class certification, and defendants argued that the proposed class period was overly long and that the court should adopt a more restrictive period than that proposed by the plaintiffs. *Id.* at * 3. Noting that the defendants had not directly contested that the plaintiff had met the requirements of Rule 23(a), the court rejected defendants' arguments, stating:

> This court will not inquire into the merits of this case by determining which statements actually opened the door to litigation and which slammed the door shut. Instead, the more inclusive class period will be certified…; a jury can determine which statements, if any, they find actionable and therefore which plaintiffs, if any, can recover from defendants.

*Id.* at *3, *citing Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982)("[I]n making a certification decision, a judge must look somewhere 'between the pleading and the fruits of discovery…(E)nough must be laid bare to let the judge survey the factual scene on a kind of sketchy relief map, leaving for later view the myriad details that cover the terrain.' … On this view, it would be improper for a district court to resolve substantial questions of fact going to the merits when deciding the scope or time limits of the class."). The *Bharucha* court then certified the class action based upon the broader class period proposed by plaintiffs. *Id.* at *5.

Likewise, in *In re: Health Mgmt., Inc.*, 184 F.R.D. 40 (E.D.N.Y. 1999), plaintiffs moved for class certification in a securities fraud action, and defendants did not directly contest the Rule 23 elements. *Id.* at 44. Instead, defendants argued that the proposed class period was improper, because they could not be held liable for the losses, if any, sustained by the plaintiffs during the entire proposed period, asserting with regards to each defendant which statements formed the earliest and/or latest possibility for liability. *Id.* The court's response was unequivocal: "The court disagrees. … In the court's view, the defendants' assertions raise factual questions which are inappropriate grounds for limiting the proposed period of class certification." *Id.*, *citing*

*Bharucha*, 1993 WL 657863 at *4, *In re: Frontier Ins. Group, Inc. Sec. Litig.*, 172 F.R.D. 31, 43 (E.D.N.Y. 1997)(determining when defendants' duty to disclose developed, in conjunction with a decision on class certification, would be an inappropriate inquiry into the merits), and *Nathan Gordon Trust v. Northgate Exploration, Ltd.*, 148 F.R.D. 105, 108 (S.D.N.Y. 1993)("The court declines to rule on the factual issue of whether there had been a proper curative disclosure… [and] will certify the broader class period.")  The *Health Mgmt.* court therefore certified the broader class proposed by the plaintiff.  *Id.* at 45 (noting that if the record after discovery included undisputed evidence supporting all or part of the defendants' contentions that the class period should be limited, defendants may at that time move for partial summary judgment).

Similarly, in *Stevelman v. Alias Research*, 2000 WL 1849815 (D. Conn. Nov. 3, 2000), the court had already granted class certification, but the plaintiff move for reconsideration, arguing that the beginning of the class period should be expanded to an earlier date, on which his proposed amended complaint alleged a press release was issued containing materially false statements about which the company CFO knew and participated in preparing.  *Id.* at *1. Defendants asked the court to examine the merits under the guise of arguing in favor of the later start to the class period (which had been previously certified).  *Id.*  The court refused to decide the factual issue of the CFO's involvement in the allegedly false statements, opting instead, "in the interests of justice, [to] certify the broadest class."  *Id.* (granting plaintiff's motion to amend and his motion for reconsideration, thus setting the class period as the more inclusive one), *citing Bharucha*, 1993 WL 657863 at *4 and *Nathan*, 148 F.R.D. at 108.

This Court should follow the sound example set forth in the *Bharucha*, *Health Mgmt.*, and *Stevelman* decisions, and all the cases to which they cite, thereby avoiding an impermissible excursion into the as-yet-undeveloped record on the merits of this case.[8]

## IV. THIS CASE SATISIFES THE RULE 23 REQUIREMENT THAT COMMON ISSUES PREDOMINATE.

Presstek has devoted only the last 5 pages of its brief to arguments concerning Rule 23. (The Individual Defendants do not discuss Rule 23 at all.) None of its arguments have merit.

### A. Plaintiff's Showing Satisfies Rule 23.

Presstek has argued that Plaintiff has presented the court with a "complete lack of data" upon which to make its certification decision. *See* Presstek Opp. at 25. It is telling that Presstek does not so much as hint as to what data is missing, as there is none. Nor has Presstek asserted any challenge to the Rule 23(a) elements of (1) numerosity, (2) common questions of law or fact, (3) typicality of the class representative, and (4) adequacy of the class representative, or to the Rule 23(b)(3) element of the superiority of a class action to other available methods for fairly and efficiently adjudicating this litigation. Plaintiff's Opening Brief addressed each of these elements, and the absence of any argument whatsoever on these elements is a concession by Defendants that all of them are met in this case.

In any event, the Amended Complaint alleges facts establishing both numerosity and a number of common issues. *See* Plaintiff's Opening Brief at 5-8. Moreover, the Affidavit of R. Allen Miller ("Miller Aff."), while primarily addressing the issue of market efficiency discussed

---

[8] It bears mentioning that, in the event that the Court certifies the broader class urged by Plaintiff now, and later down the line reaches the conclusion that a narrower class is more appropriate, the Court may alter or amend its certification order at any time before final judgment to adjust the scope of the certified class, pursuant to Fed. R. Civ. P. 23(c)(1)(C). *See*, *e.g.*, *Tardiff v. Knox County*, 365 F.3d 1, 6 (1st Cir. 2004)(class certification decisions, once made, are subject to later revision, including for purposes of narrowing the class).

*infra*, sets forth facts concerning the number of Presstek shares outstanding and trading volume that are sufficient to show numerosity.  Miller Aff. ¶11; Exh. C.[9]  Plaintiff's Opening Brief also demonstrates that the typicality and adequacy requirements of Rule 23 are met, *id.* at 8-11, and Defendants have made no arguments to the contrary, notwithstanding the fact that they obtained document discovery from Lead Plaintiff and deposed him.  Indeed, Plaintiff's signed Amended Certification of Securities Fraud Class Action Complaint, his securities account trading statements, and his deposition testimony – materials in Defendants' possession – all substantiate his typicality and his adequacy to represent the Class.  Plaintiff's Opening Brief also explained why Rule 23(b)(3)'s superiority requirement has been satisfied, *id.* at 13-15, and Defendants have not argued to the contrary.  Therefore, without hesitation, the Court should find that each of the aforementioned elements of Rule 23 has been met.

> **B.    Common Questions Predominate Over Any Individual Issues Of Loss Causation, Damages, Or Unique Defenses.**

Defendants have not challenged Plaintiff's arguments that Rule 23(a) commonality has been satisfied.  Thus, the common questions set forth in Plaintiff's Opening Brief, *id.* at 8, are not in dispute.  Each of those common questions, as well as those discussed *supra* that are highlighted by Defendants' merits-based arguments on class certification, pertain to issues of liability that are identical from one Class member to the next and that focus on liability issues.

Presstek has argued, in essence, that Rule 23(b)(3) predominance is not satisfied: (1) because individual Class members would have to establish (as they must in <u>every</u> securities fraud class action) that they have suffered an economic loss that was caused by Defendants' conduct; (2) because individual determinations would at some point need to be made (as they are in <u>every</u>

---

[9]  As used herein, "Exh." shall refer to the exhibits to the Miller Aff.

securities fraud class action) concerning each Class member's date of stock purchase, number of shares purchased, date of stock sale, sale price, etc.,[10] and (3) because Defendants have the right (as they would in <u>any</u> securities fraud class action) to present individual defenses regarding Class members. *See* Presstek Opp. at 26-27.[11] It is noteworthy that the two sentences of Presstek's brief arguing that such individual issues would predominate over common issues of liability are not supported by citation to a single case from any jurisdiction. *See id.* at 26 (last two sentences).

The reason for that omission is obvious. The case law within the First Circuit makes abundantly clear that the types of concerns Presstek highlights do not defeat Rule 23(b)(3) predominance in securities fraud class actions such as the case at bar. For instance, as Judge Barbadoro stated in the *Tyco* case:

> As the First Circuit has recognized, classes are routinely certified where common issues predominate even though individual issues exist with respect to other matters such as affirmative defenses or damages. *Smilow w. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003). There is no reason why this principle should not also apply to the subject of loss causation. Here, the need to make different loss causation determinations for class members depending on when they sold their stock does not alter the "sufficient constellation of common issues [that] binds class members together" into a single class. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000).

*In re: Tyco Int'l, Ltd. Multidistrict Litig. (MDL 1335)*, 2007 WL 1703067 (D.N.H. June 12, 2007).

Similarly, the First Circuit has held:

---

[10] It is standard practice in innumerable securities class actions to have a claims process by which class members submit proofs of claim with documentation of their purchases and sales during the class period for purposes of determining the damages of individual class members. This does not defeat predominance.

[11] It bears noting that Defendants have not identified any such individual defenses. As noted below, individual defenses do not defeat class certification; speculation that there might be such defenses is no grounds for denying class certification.

> [W]here common issues otherwise predominated, courts have usually certified Rule 23(b)(3) classes even though individual issues were present in one or more affirmative defenses. … After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class. … If, moreover, evidence later shows that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms. *In re: Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001)(describing procedural options and collecting authorities); 1 H. Newberg & A. Conte, *Newberg on Class Actions* §4.26, at 4-91 to 4-97 (3d ed. 1992)(same).

*Smilow*, 323 F.3d at 39-40 (some internal citations omitted).  *See also in In re: Sepracor, Inc. Sec. Litig.*, 233 F.R.D. 52, 54 (D. Mass. 2005).

Following suit, another judge in this Circuit stated:

> The Defendants once again conflate the consideration of the merits with the 23(b)(3) predominance analysis. … The extent to which variations in the level of inflation from one day to the next impact individual class members differently will become a material issue only during the damages, rather than the liability, phase of the trial.  As set forth above, procedural mechanisms are available for addressing this concern if and when it becomes necessary to do so.  Furthermore, there is First Circuit precedent supporting a finding of predominance under 23(b)(3) even if individual issues may take center stage when it comes to damages.

*Swack*, 230 F.R.D. at 272-273 (citations omitted).

Moreover, these decisions from the First Circuit and its district courts are in line with jurisprudence from other federal courts nationwide.  *See, e.g., Smith v. Suprema Specialities, Inc.*, 2007 WL 1217980 (D.N.J. Apr. 23, 2007)("To be sure, the various members of the proposed plaintiff class could present divergent individual issues of damages, loss causation, or reliance.  But divergence on these issues is not an impediment to class certification so long as predominance exists as to liability.") *citing*, *inter alia*, *In re: Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998)("In particular, the 'presence of individual questions as to the

reliance of each investor does not mean that the common questions of law and fact do not predominate.") *and Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 252 (D.N.J. 1992)("to allow various secondary issues of the plaintiff's claim to destroy the institution of a class action would render the rule an impotent tool for private enforcement of the federal securities laws").

As such, this Court should follow the clear weight of jurisprudence within this Circuit and elsewhere and rule that Defendants' conjecture that there might be issues of loss causation, individual defenses, and damages does not predominate over the common questions of liability discussed herein and in Plaintiff's Opening Brief.  The Court should find that Plaintiff has satisfied the Rule 23(b)(3) predominance requirement.

C.    **Presstek's Stock Traded In An Efficient Market During the Class Period. The Plaintiff Is Therefore Entitled To The Fraud-On-The-Market Presumption of Reliance.**

Presstek has argued that this action cannot be certified as a class action because Plaintiff has not established that Presstek stock traded in an efficient market, a prerequisite for the fraud-on-the-market theory of reliance.  Plaintiff submits herewith the Affidavit of R. Alan Miller, which demonstrates that Presstek's stock traded in an efficient market.  The First Circuit in *Polymedica* endorsed the standards for determining market efficiency in the seminal and oft-cited case of *Cammer v Bloom,* 711 F. Supp. 1264 (D.N.J. 1989).  Indeed, Presstek itself asserts that the five so-called *Cammer* factors are "[t]he most widely accepted indicators of market efficiency."  Presstek Opp. at 28 n.8.  The Miller Aff. submitted herewith discusses each of the *Cammer* factors and shows Presstek's stock clearly meets each of them.

As reflected in his affidavit, and in the resume attached thereto as Exhibit A, Mr. Miller, President of Philadelphia Investment Banking Company, has extensive experience in the securities arena, and he has testified as an expert on numerous occasions as to market efficiency. *See* Miller Aff. ¶¶2-4; Exh. A. At Plaintiff's request, Mr. Miller examined the efficiency of the market for Presstek stock during the proposed Class Period. *Id.* ¶5.

Mr. Miller considered in his analysis the five widely-accepted market-efficiency factors enumerated in *Cammer.* *See* Miller Aff. ¶¶6-7. Those five *Cammer* factors are: (1) average weekly trading volume; (2) number of analysts who follow the stock; (3) number of market makers or arbitrageurs; (4) the company's eligibility to file an S-3 Registration Statement; and (5) the stock price's reaction to unanticipated news. *Id.* ¶7.[12] Mr. Miller also considered the suggested presumption that all NASDAQ Global Market System ("GMS") stocks trade on efficient markets, the fact that Presstek stock traded on NASDAQ GMS, and the fact that markets like NASDAQ GMS have become even more efficient since *Cammer* was decided. *See* Miller Aff. ¶9; Exh. B.

With respect to the *Cammer* factors, Mr. Miller made the following observations, among others, all of which support a finding of market efficiency:

(1) <u>Average Weekly Trading Volume.</u> Presstek experienced substantial weekly trading volume during the proposed Class Period of just over 1 million shares on average, which represents almost 3% of Presstek's outstanding shares (35.6 million). Thus, trading volume

---

[12] Mr. Miller also took direction from the *Cammer* court's instructions that "the central question under the fraud on the market theory is whether the stock price, at the time a plaintiff effected a trade, reflected the 'misinformation' alleged to have been disseminated," *id.* ¶7 *quoting Cammer*, 711 F. Supp. at 1282, and that "it would be helpful to a plaintiff seeking to allege an efficient market to allege empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *Id.* ¶7 *quoting Cammer*, 711 F. Supp. at 1287.

substantially surpasses the *Cammer* standard of average weekly trading volume in excess of two percent of the company's outstanding shares. *See* Miller Aff. ¶11; Exh. C. Thus, the first *Cammer* factor is satisfied.

(2) <u>Number of Analysts Who Follow the Stock.</u> Thomson Financial's Investext lists ten analyst reports from four sources during the Class Period, while Reuter's Multexnet listed five documents from five sources. *Id.* ¶12; Exh. E. Thus, the second *Cammer* factor is satisfied.

(3) <u>Number of Market Makers or Arbitrageurs.</u> As identified by Bloomberg, there were at least 26 market makers for Presstek stock during the Class Period, including all major firms (such as Merrill Lynch, Goldman Sachs, Bear Stearns, and Citigroup Global Markets) and at least five which traded over a million shares each. *Id.* ¶13; Exh. D. Thus, the third *Cammer* factor is satisfied.

(4) <u>The Company's Eligibility to File an S-3 Registration Statement.</u> Eligibility to file an S-3 Registration Statement is one of the *Cammer* factors. The eligibility requirements included having filed reports with the SEC for 36 months and having $150 million of voting stock held by nonaffiliates or $100 million of such stock together with annual trading volume of 3,000,000 shares per year. *Id.* at 1271 n.5. Presstek clearly qualified for S-3 registration during the Class Period, because, among other things, it was registered under Section 12(g) and had timely filed reports with the SEC for more than three years and the aggregate market value of common stock held by non-affiliates of the company was roughly $321 million as of July 1, 2006. Miller Aff. ¶16. Presstek's average weekly trading volume during the Class Period was

over 1,000,000 shares (*id.* ¶11); thus, it far exceeded the requirement of annual trading volume of 3,000,000 shares.  The fourth *Cammer* factor is clearly satisfied.[13]

(5)  The Stock Price's Reaction to Unanticipated News.  During the Class Period, Presstek regularly filed reports with the SEC; the Factiva.com retrieval service of Dow Jones & Reuters lists 142 articles mentioning Presstek, 34 of which are from "major" sources; and the Yahoo bulletin board for Presstek alone had 313 chat room postings.  *Id.* ¶14; Exhs. F, G.  A review of publicly disseminated information (e.g. SEC reports, press releases, analyst reports, and other news stories about the company) alongside the price and volume of Presstek stock indicated that its stock price responded to news.  *Id.* ¶17.  For example, on July 27, 2006, Presstek's stock price dropped 20.7%, from $9.71 to $7.70, on volume of roughly 1.2 million shares after Presstek announced its Q2 2006 results.  *Id.*  One analyst attributed the decline to Presstek missing expected earnings per share by one penny on lower-than-expected gross margins.  *Id.* (citing a Craig-Hallum Capital Group analyst report).  Likewise, on September 29, 2006, Presstek's stock declined 13.5%, from $6.23 to $5.39, on volume of roughly 3.8 million shares.  *Id.*  A news article attributed this drop to Presstek's forecast of a Q3 2006 loss because of lower than expected revenues.  *Id.* (citing a Reuters article).  Both the July 27, 2006 and the September 29, 2006 news events caused Presstek's one-day trading volume to exceed its average weekly trading volume during the Class Period.  *Id.*  Thus, the fifth *Cammer* factor is satisfied.

After performing his analysis, Mr. Miller concluded with regards to the efficiency of the market for Presstek stock as follows:

---

[13]  Since *Cammer* was decided, the eligibility requirements for filing a Form S-3 have relaxed considerably. Presstek, in satisfying those factors as they existed when *Cammer* was decided, also would have satisfied the later, more lenient requirements.

> Based on the *Cammer* factors…as well as my background, experience, and expertise…and factors affecting information dissemination to the markets since *Cammer* was decided, it is my opinion that, during the Class Period at issue, Presstek common stock traded in an efficient market.

Miller Aff. ¶8.

Plaintiff has more than satisfied his obligation to establish market efficiency regarding Presstek's stock during the Class Period. As such, Plaintiff is entitled to the fraud-on-the-market presumption, and Presstek's arguments to the contrary should be rejected.

## V. DEFENDANTS' CONTENTION AS TO THE CLASS DEFINITION IS PREMATURE

Presstek's final argument is that so-called "in-and-out traders" should be excluded from the Class because there was no corrective disclosure until the post-midnight press release on September 29, 2006, and therefore persons who sold their shares prior thereto suffered no damages on account of the fraud. Presstek Opp. at 29.

Presstek, however, ignores the allegations in the Amended Complaint that circumstances strongly indicate there was a leak by Presstek that caused the rapid decline in the price of Presstek stock during trading on September 28, 2006. Amended Complaint, ¶¶61-64. Moreover, as Judge DiClerico stated in his Motion to Dismiss decision, "The question of what caused the 20% overnight decline [from September 28 to September 29, 2006] in value is a matter of proof that cannot be determined at this stage." 2007 WL 2740047 at *11. Accordingly, purchasers of Presstek stock during the Class Period who sold their shares on September 28th may have been damaged by Defendants' conduct, and they should not be excluded from the Class at this stage of the case.

Furthermore, because Defendants successfully obtained a stay of merits discovery, Plaintiff has not yet had discovery as to other possible leaks by Defendants during the Class Period. Therefore, it is premature to hold that persons who sold their Presstek stock at a loss during the Class Period were not damaged by Defendants' fraud.

For all these reasons, a ruling on "in-and-out traders" should be deferred until the completion of merits discovery.

## CONCLUSION

For the reasons discussed above, and those set forth in Plaintiff's Opening Brief, the Court should enter an order (i) certifying this action as a class action, (ii) certifying a Class consisting of all purchasers of Presstek common stock during the Class Period from July 27, 2006 through September 28, 2006, inclusive, (iii) appointing Sloman as Class Representative; and (iv) appointing Shapiro Haber & Urmy LLP and Mallory and Friedman PLLC as counsel for the Class.

Dated: July 31, 2008                     By his attorneys,

                                         /s/ Mark L. Mallory
                                         Mark Mallory (#1599)
                                         Mallory and Friedman, PLLC
                                         8 Green Street
                                         Concord, NH 03301
                                         (603) 228-2277
                                         mark@malloryandfriedman.com

                                         Thomas G. Shapiro, *pro hac*
                                         Matthew L. Tuccillo, *pro hac*
                                         Shapiro Haber & Urmy LLP
                                         53 State Street
                                         Boston, MA 02109
                                         (617) 439-3939
                                         tshapiro@shulaw.com
                                         mtuccillo@shulaw.com

*Counsel for Lead Plaintiff*

**Certificate of Service**

I hereby certify that on the date of its filing with the Court, a copy of this document was served on all parties of record via the Court's ECF system.

/s/ Mark L. Mallory_____
Mark Mallory (#1599)